HOWARD (UNITED STATES v.). See Cases Nos. 15,399–15,404.

HOWARD (VIRGINIA v.). See Case No. 16,-963.

HOWARD (VOSS v.). See Case No. 17,013.

HOWARD, The EDWARD. See Case No. 6,-436.

HOWARD, The IDA L. See Case No. 6,999.

HOWARD, The MAY. See Case No. 9,348.

## Case No. 6,764.

### Ex parte HOWARD NAT. BANK.

### In re NORTH et al.

[2 Lowell, 487;[1] 16 N. B. R. 420.]

District Court, D. Massachusetts. June, 1876.

#### COMPOSITION—SET-OFF.

1. A deposit in a bank becomes, upon the bankruptcy of the depositor, a security for and payment pro tanto of his liabilities to the bank, by the operation of the law of mutual credit.

[Cited in National Mahaiwe Bank v. Peck, 127 Mass. 302.]

2. The deposit should be set off against the aggregate amount of the notes of the bankrupt on which he is principal debtor, or on which, he being indorser, the real principals are insolvent. Solvent principals, for whom the bankrupt is surety, must pay their own notes.

3. It seems, if a bank has contingent or unliquidated claims against a bankrupt depositor, his deposit may be retained by the bank until it is ascertained what the provable debt is, if any, and then it can be used in set-off so far as is necessary.

4. In composition cases, in which no assignee has been appointed, the debtor stands in the position of an assignee in respect to set-off.

C. H. North & Co., having failed, filed their petition in bankruptcy in March, 1876, and soon after offered a composition of fifty per cent, which was accepted and recorded in April. Upon their schedules were several notes signed by various persons and indorsed by the bankrupts, and other notes signed by the bankrupts and indorsed by sundry persons, which had been discounted by the Howard National Bank of Boston, of which some were overdue before the composition was effected, and some were not yet payable. The bank had about $2,000 of the money of North & Co. on deposit. When the composition was recorded, the bankrupts, together with the several parties, respectively liable on certain of the notes, went to the bank and took up the paper, nothing being said about the deposit. Afterwards, the bank claimed the right to apply the deposit upon a note signed by D. M. Oliver & Co., and indorsed by North & Co., which came due in May; and the latter insisted that the credit should be given on an earlier note signed by J. N. Tryon, and indorsed by the bankrupts, which was overdue when the

composition was made. This question was submitted to the court on the foregoing facts.

N. Morse, for the debtors, contended that they had the first right of appropriation, as in case of payment of money by a debtor to his creditor; that the bank had the next right; but that, as nothing was done about it up to the time of the composition, the deposit should be applied to the debt which came due the earliest.

H. D. Hyde, for the bank, argued that it was like collateral security, which the holder may appropriate in the mode most beneficial to himself.

LOWELL, District Judge. This deposit, though it operates as security and as payment, was not intended for either, but is made so by the bankruptcy of the debtor; the law being unwilling that the bank should be called on to pay its debt to the assignee in full, and receive only a dividend on the debt due from the bankrupt.

I have been referred to no decision which approaches this case, and have not had time for a thorough examination; though I venture to think I should know of some of the cases, if there were many.

It would be easy to put a variety of supposed cases, in which the assignee or the bank might be thought to have equities on the one side or the other, and I have exercised my mind somewhat in that direction; but, on the whole, I have come back to the language of the statute, and find the simplest way the best. The statute says, that, in all cases of mutual debts or mutual credits between the bankrupt and a creditor, the account between them shall be stated, and one debt be set off against the other, and the balance only be allowed or paid, as the case may be. In bankruptcy, all debts are to be liquidated as of one and the same day; and the reason for applying a payment to the first debt rather than the second ceases, for that reason is the presumption that a debtor intends to begin at the beginning. There is no beginning nor end to debts in bankruptcy, excepting that they must be debts, or be capable of liquidation at some time before the case is closed. There can be no doubt, for instance, that if the bank held mere contingent debts or contingent liabilities, or a claim for unliquidated damages arising by contract, the deposit must be left in their hands, until it could be ascertained what their provable debt would be, if anything; and that it might then be used as a set-off.

In this state of the law, it appears to me that the credit should be set off against the whole ultimate debt to the bank; that is to say, against the aggregate amount of the notes of the bankrupt in which he is the principal debtor, and as to those in which he is indorser, so far, and so far only, as is

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

made necessary by the insolvency of the real principals. Where he is surety for solvent principals, they must pay their own debts.

When a debtor pays money, he may dictate the mode of its application at his pleasure, for the reason that he might have withheld the payment altogether. If he gives security, he gives it for such debts as he agrees to have it applied to. If payment is made generally, or security is given without restriction, the creditor has the right of appropriation; because it is presumed that the debtor would have signified his choice, if he had any, or, if the security was part of the bargain, that its special application would have been cared for when the bargain was made. A set-off created by law to prevent injustice does not stand on the footing of contract. The money or credit belongs to the assignee for the use of the general creditors; but the law says he shall not recover it in full, and turn the particular creditor over to a dividend. This leaves the appropriation, not to the actual or presumed intent of the parties, for there is none, but to the operation of the law of mutual credit.

I understand the practice in England to be, that a banker who has discounted notes for his customer may prove for the whole money as so much lent the customer, exhibiting a list of his notes or bills, which are called securities. Any deposit the banker has in hand would come out of this sum total. If, however, any bill or note is paid by other parties after the proof has been admitted, its amount is to be deducted from the total debt proved. In other words, the proof is considered as made on each note or bill separately, though not so in form. See Ex parte Burn, 2 Rose, 55; Ex parte Barratt, 1 Glyn & J. 327; Ex parte Hornby, De Gex, 69.

It is plain, that, if it were our practice to prove in this way, we could only require such notes and bills to be struck out as were paid by the parties primarily bound to pay them; because all sureties and indorsers, and other persons in similar relation to the bankrupt, can retain the proof of the creditor against the estate of the principal debtor: and I suppose this to be the law of England too, though it has not been applied there to this precise case. The effect of such a mode of proof, and of such subsequent modification of it as obtains in England, would be, that the set-off would practically be applied pro rata to the whole primary debt of the bankrupt, and to so much of the debt which he had contracted as indorser or surety for others as they were not able to meet; which is the result I have reached by a somewhat different way.

In this district, it is not the law, and I suppose it is not the custom of bankers, to consider the discounts as money lent, and

the notes as security; but each note is treated as a separate contract, and is to be so proved in bankruptcy. This is undoubtedly the law of Massachusetts; but the law of England seems to amount to nearly the same in practice, with the important exception, that the banker there can vote on his whole debt at the first meeting, while here he can vote only on the absolute debt, reserving his proof against the bankrupt as drawer or indorser until the several notes or bills shall have been dishonored,—a practice which seems simple and just, and which puts a holder of notes, which he has bought in the market, on the same footing with the banker who has originally discounted them for the person who afterwards becomes bankrupt.

There is a class of cases, bearing some resemblance to the present, which tend to support the rule I adopt. The several indorsers of the bankrupt's notes are considered as quasi sureties for him. If, therefore, they pay the notes, they can stand in the place of the bank; and they have an equity to say that any security or set-off which the creditor holds shall be duly applied towards the debt. This is admitted law. Now, in many cases where a creditor has had a surety for a specific part of his debt, and has proved the whole debt against the bankrupt principal, it has been held that he must give credit for the dividends pro rata, so as to relieve the surety in the proportion that the debt for which he is liable bears to the whole. This doctrine has been applied where there were several guarantors or sureties for given amounts, and to the case of accommodation acceptances, where the acceptors, having paid the bills, were subrogated to their proportion of the whole debt proved against the principal. I see no distinction in the doctrine, but only in the mode of its application between that case and this. Here is a sum of money which the law says shall be a payment, not of any particular part, but generally, of the debt of the bank; and I think each indorser may say that he has an interest in so much of it as will be represented by the note he has indorsed compared to the whole debt. Cases involving the principle which I refer to are Ex parte Turner, 3 Ves. 243; Ex parte Rushforth, 10 Ves. 409; In re Plummer, 1 Phil. Ch. 56; Hobson v. Bass, 6 Ch. App. 792; Paley v. Field, 12 Ves. 435; Bardwell v. Lydall, 7 Bing. 489; Gray v. Seckham, 7 Ch. App. 680. I have treated this as a case between an assignee and a creditor, because the bankrupt in a composition case stands, as to set-off, in the position of an assignee, if none has been appointed. The credit is to be set against the aggregate debt of the bank, not including any notes upon which the bankrupt is surety, unless the principals are insolvent.