# CUMBERLAND GLASS MANUFACTURING COMPANY *v.* DE WITT AND COMPANY.

## ERROR TO COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 191.   Argued March 10, 1915.—Decided May 10, 1915.

A plea of former judgment in a Federal court adjudicating a right of Federal origin, asserts a right which if denied makes the case reviewable here under § 237, Judicial Code. *Deposit Bank* v. *Frankfort,* 191 U. S. 499.

The effect of a composition proceeding as provided in the Bankruptcy Act is to substitute that proceeding for the bankruptcy proceeding and in a measure to supersede the latter, and, when the composition is confirmed, to reinvest the bankrupt with all his property free from claims of his creditors.

Composition proceedings arise from the bankruptcy proceedings and this part of the statute is to be construed with the entire act. *Wilmot* v. *Mudge,* 103 U. S. 217.

The restoration of his estate to the bankrupt after a composition restores to him the right of action upon choses in action. *Cf. Stone* v. *Jenkins,* 176 Massachusetts, 544.

The object of the set-off provision in § 68-a of the Bankruptcy Act is to permit the statement of accounts between the bankrupt and his creditor with a view to the application of the doctrine of set-off between mutual debts and credits; it is permissive rather than mandatory, does not enlarge the doctrine of set-off and cannot be invoked where the general principles of set-off would not justify it.

The set-off provision in § 68-a of the Bankruptcy Act is not self-

executing and its benefit is to be had only upon the action of the District Court when it is properly invoked.

After composition had been affirmed by the Bankruptcy Court against the opposition of a creditor, a claim against whom by the bankrupt had been scheduled as an asset, the creditor, without applying to the District Court to set off the mutual claims, accepted the composition dividend, after which the bankrupt sued on the scheduled claim. *Held* that:

The effect of the composition was to reinvest the bankrupt with all of his assets including the right to maintain a suit on the choses of actions including this claim against this creditor.

There was no automatic set-off under § 68-a of the Bankruptcy Act.

The effect of the composition was not to extinguish the claim of the bankrupt against the creditor on his claim against the latter and there was no adjudication that could be pleaded as *res judicata* in a Federal court, and the state court did not err in respect to any Federal question in rejecting the plea of *res judicata.*

120 Maryland, 381, affirmed

THE facts, which involve the construction and application of certain provisions of the Bankruptcy Act in regard to appeals of mutual claims of the bankrupt and the creditors, are stated in the opinion.

*Mr. Henry H. Dinneen* and *Mr. Arthur L. Jackson* for plaintiff in error.

*Mr. Thomas G. Hayes* and *Mr. Lewis W. Lake* for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

Defendant in error, Charles De Witt, trading as Charles De Witt & Company, plaintiff in the court below and hereinafter spoken of as the plaintiff, brought his action in the Superior Court of Baltimore City, Maryland, to recover of the Cumberland Glass Manufacturing Company, hereinafter called the Glass Company, upon the ground that De Witt, having entered into a written contract with the Mallard Distilling Company of New

York to supply them with certain lettered flasks, the Glass Company, with knowledge of that contract, by and through the medium of their agents, did visit the Mallard Distilling Company, and maliciously and without just cause, with the intent to injure the plaintiff and. to derive a benefit for itself, did cause, induce, and procure. the said Mallard Distilling Company to rescind, break and violate its contract with the plaintiff. Pleas were interposed, and a trial was had in the Superior Court, resulting in a verdict and judgment in favor of the plaintiff, which judgment was affirmed in the Court of Appeals of the State of Maryland (120 Maryland, 381), and the case was brought here.

Summing up the defenses made in the state court, the Maryland Court of Appeals said (120 Maryland, 386) "The defendant interposed three pleas—first that it did not commit the wrong alleged; secondly, limitations; thirdly *res judicata*, based upon certain proceedings had in the United States District Court for Maryland, and particularly set out in the pleas."

The Federal question, which is the basis of jurisdiction here, arises upon the plea of *res judicata* to which a demurrer was sustained in the Maryland court of original jurisdiction which judgment was affirmed by the Court of Appeals. This presents a Federal question because the plea of former judgment in a Federal court adjudicating a right of Federal origin, asserts a right which if denied made the case reviewable here under § 709, Revised Statutes, § 237, Judicial Code. *Deposit Bank* v. *Frankfort*, 191 U. S. 499.

From this plea, it appears that the plaintiff, trading as Charles De Witt and Company, was adjudicated a bankrupt in the United States District Court of Maryland, on the eighth day of February, 1910; that in the list of creditors, plaintiff listed the Glass Company as a creditor in the sum of $790.03 (which claim was upon a

promissory note); that proof was duly made of this claim against the plaintiff, in the bankruptcy proceeding; and that among the unliquidated assets reported to the bankruptcy court by the plaintiff was a chose in action against the Glass Company, listed as a claim of De Witt's against the defendant, of unliquidated damages for commissions and breach of contract, in the sum of $940. (The testimony showed that this was the same claim sued upon in the Maryland state court so far as the demand for $800 damages is concerned.) The plea shows that afterwards, on the twenty-sixth day of March, 1910, the plaintiff filed a petition in the United States District Court, setting out that he had submitted a composition to his creditors whereby they were to accept twenty cents on each dollar of their respective claims in full settlement of their demands against him and his bankrupt estate; further, that a majority in amount of said creditors had agreed to accept the terms of the composition agreement, wherefore he prayed that the same be ratified by the court; that the Glass Company did not agree in writing, pursuant to the provisions of the Bankruptcy Act, or otherwise, to accept said settlement, but as a majority in amount of said creditors did accept the same, it was ratified by the Federal court, and there was allowed to the defendant the sum of $158.01, as a dividend on its claim of $790.03; that no debit was made against the Glass Company by reason of the alleged claim of De Witt against it for the sum of $940.

Further, "that under and by virtue of the provisions of § 68-a of said Federal Bankruptcy Act it was and became the duty of the referee in bankruptcy and the trustee in bankruptcy representing the bankrupt estate of said De Witt to investigate and determine the existence and validity of any claim asserted by said bankrupt against any creditor filing his claim against said estate; and thereupon to set off the claim of such bankrupt

against his said creditor against the claim of said creditor against the bankrupt, and pay, or demand the payment to the bankrupt estate the difference between the accounts thus stated; that as the said referee, trustee and bankrupt De Witt, the latter the plaintiff herein, did not assert or claim, in said composition account, that any portion of the aforesaid sum of $940 was justly due and owing by this defendant to the then bankrupt estate of the said plaintiff, as claimed by said De Witt in his schedule of assets; that this defendant, being led to believe by the action of the said referee, trustee and bankrupt in remaining silent and ignoring said bankrupt's alleged claim against this defendant when it was their duty to have spoken and set out the same, if it was found by them or any of them to be due, against said defendant in said composition agreement, did not exercise its right to except to the ratification of said composition account, but suffered said composition account to be finally ratified and confirmed, and unwillingly accepted the settlement of twenty cents on the dollar made according to the tenor of said composition agreement; that this defendant received and accepted its dividend of twenty per cent. therefrom in satisfaction of all its claims against said De Witt and in exoneration by said De Witt from any and all claims which said De Witt at that time had or claimed to have, and this defendant says that the payment to it by said bankrupt of said dividend and its acceptance by this defendant operated as a final settlement and adjustment, in a court of competent jurisdiction, of any and all claims which the parties to this suit then had, or claimed to have, against each other. Wherefore, this defendant says that the alleged cause of action set out in the plaintiff's amended narr. is *res judicata.*"

As it was the effect of the judgment of the state court to deny this plea of *res judicata*, it will be necessary to consider somewhat the nature of the proceeding.

Compositions in bankruptcy are provided for by the Bankruptcy Act of 1898, c. 541, 30 Stat. 544. By § 12 of the Act, the bankrupt is permitted to offer a composition after he has been examined in open court or at a meeting of his creditors, and after he has filed in court a schedule of his property and a list of his creditors. Since the Amendment of 1910 the offer may be made either before or after adjudication. In order that the composition be effectual, it must be accepted in writing by a majority in number of all the creditors, and the consideration to be paid by the bankrupt to his creditors and the money necessary to pay debts having priority and the cost of proceeding must be deposited in a place to be designated by, or subject to the order of, the judge. The judge shall confirm the composition if satisfied that it is for the best interests of the creditors, that the bankrupt has not been guilty of any of the acts nor failed to perform any of the duties which would be a bar to his discharge, and that the offer and acceptance are in good faith and have not been made or procured by the means prohibited in the Act. Upon confirmation of the composition, the consideration is distributed as the judge shall direct, and the case dismissed. Whenever the composition is not confirmed, the estate shall be administered as otherwise provided in the Bankruptcy Act.

Under § 70-f of the Act, it is provided that, upon the confirmation of a composition offered by a bankrupt, the title to his property shall thereupon revest in him. By § 21-g of the Act it is also provided that a certified copy of the order of confirmation shall constitute evidence of the revesting of the title, and when recorded, shall impart the same notice that a deed from the trustee to the bankrupt if recorded would impart. The order of confirmation becomes in effect a discharge, and is pleaded in bar with like effect. It operates to discharge the bankrupt from all debts, other than those agreed to be paid by the terms of the composition and those not affected by a discharge.

It is thus apparent that, although the composition is provided for by the Bankruptcy Act, it is in some respects outside of the Act, for it is provided that, if the composition is not confirmed, the estate shall be administered in bankruptcy, as in the Act provided.

The nature of composition proceedings is nowhere better stated than by Judge Lowell in *In re Lane*, 125 Fed. Rep. 772, 773, in which it is said:

"The case of composition is in some respects exceptional. It is a proceeding voluntary on both sides, by which the debtor of his own motion offers to pay his creditors a certain percentage of their claims in exchange for a release from his liabilities. The amount offered may be less or more than would be realized through distribution in bankruptcy by the trustee. The creditors may accept this offer or they may refuse it. For the purposes of the composition all the creditors are treated as a class, and the will of the majority is enforced upon the minority, provided the decision of the majority is approved by the court. Except for this coercion of the minority, the intervention of the court of bankruptcy would hardly be necessary. Section 12-e (30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]) provides: 'Upon the confirmation of a composition, the consideration shall be distributed as the judge shall direct, and the case dismissed. Whenever a composition is not confirmed, the estate shall be administered in bankruptcy as herein provided.' Composition is thus treated, even in the act, as in some respects outside of bankruptcy. In the ordinary case of distribution by a trustee, the debtor's whole property, save that which is exempt, is applicable to the payment of his debts and belongs to his creditors, and not to him, until their claims have been satisfied. After adjudication there is no voluntary offer to pay by the bankrupt, and no bargained release by the creditor. The creditor takes all his debtor's property whether the debtor likes it or

not. . . . The bankrupt's rights of property arise
only in the event of a payment of his creditors in full.
If a creditor will not prove his claim, the bankrupt does
not take that creditor's share, but it goes to swell the
dividends of creditors more diligent. Section 66 of the
act (30 Stat. 564 [U. S. Comp. St. 1901, p. 3448]) has the
same purpose, and does not apply to composition. But
if the composition is paid the creditors have no further
claim upon the debtor or his property. In a composition
the creditor gets, not his share of the bankrupt's estate,
but what he bargained for, and he has no right to claim
more."

The effect of the composition proceeding is to substi-
tute composition for bankruptcy proceedings in a certain
sense, and in a measure to supersede the latter proceed-
ing, and to reinvest the bankrupt with all his property
free from the claims of his creditors. True the composi-
tion proceedings arise from the bankruptcy proceedings,
and this part of the statute is to be construed with the
entire act. *Wilmot* v. *Mudge*, 103 U. S. 217. That the
restoration of the estate to the bankrupt restores to him
his right of action upon choses in action there is no ques-
tion. *Stone* v. *Jenkins*, 176 Massachusetts, 544.

With this general view of the nature and effect of
composition proceedings, we come to a consideration of
§ 68-a of the Bankruptcy Act, under which it is claimed
the set-off was adjudicated in the bankruptcy court by
reason of the proceedings we have already set forth.
Section 68-a of the Bankruptcy Act of 1898 provides that
"in all cases of mutual debts or mutual credits between
the estate of a bankrupt and a creditor the account shall
be stated and one debt shall be set off against the other,
and the balance only shall be allowed or paid." The
object of this provision is to permit, as its terms declare,
the statement of the account between the bankrupt
and the creditor, with a view to the application of the

doctrine of set-off between mutual debts and credits. The provision is permissive rather than mandatory, and does not enlarge the doctrine of set-off, and cannot be invoked in cases where the general principles of set-off would not justify it.   Black on Bankruptcy, § 544; *In re Kyte,* 182 Fed. Rep. 166.   The matter is placed within the control of the bankruptcy court, which exercises its discretion in these cases upon the general principles of equity.   *Hitchcock* v. *Rollo,* Fed. Cas. 6,535.   The section was taken almost literally from § 20 of the act of 1867. In *Sawyer* v. *Hoag,* 17 Wall. 610, in considering that section of the act of 1867, this court said: "This section was not intended to enlarge the doctrine of set-off, or to enable a party to make a set-off in cases where the principles of legal or equitable set-off did not previously authorize it."   While the operation of this privilege of set-off has the effect to pay one creditor more than another, it is a provision based upon the generally recognized right of mutual debtors, which has been enacted as part of the Bankruptcy Act, and when relied upon should be enforced by the court.   *Bank* v. *Massey,* 192 U. S. 138.

It hence appears that the object of this section was to give the District Court the right to apply the established principles of set-off to mutual credits, when its action was invoked for that purpose.

The language of the act indicates the necessity of action by the court, for the statute provides that "the account shall be stated" and the one debt set off against the other and the balance only allowed to be paid.   This statute recognizes the nature of set-off, as established in common law and equitable procedure.

"By the civil law, when there are cross-claims between a plaintiff and defendant which are so connected with each other that the establishment of one can legitimately defeat, reduce, or modify the other, the defendant is always entitled to insist that his own claim shall be liti-

gated with that of the plaintiff; that both shall be disposed of·by one sentence; and that the plaintiff's recovery shall be limited to what he shall be entitled to, if anything, as the result of adjusting both ·claims and striking a balance, if necessary, between them; and he does this by bringing a cross-action (*reconventio*). Mutual debts do not, indeed, properly constitute cross-claims by the civil law, for they extinguish each other *ipso jure*, and the party alone in whose favor the balance is, has a claim which can be enforced by action, and his claim is only to the extent of such balance. Therefore a defendant who, at common law, would have recourse to a statutory set-off, would not, by the civil law, bring a cross-action, but he would plead payment (*compensatio*). Nor is a defendant, who has a genuine cross-claim, bound to assert it by a cross-action; he may assert it by a wholly separate and independent action. How, then, does a cross-action differ from one which is not a cross-action, and which nevertheless is brought by a defendant against a plaintiff? It is conceived that the essential difference is in the judgment. If a defendant wishes to have his own claim and the plaintiff's disposed of by one sentence, in the manner before stated, he brings a cross-action. If he wishes to have his own claim disposed of by a separate sentence, and without any reference to the plaintiff's claim, he brings a separate action. In the latter case he·may of course choose his own time for suing, and his own court, and may prosecute his action slowly or speedily, as he sees fit, and without any reference to the plaintiff's action; but in the former case, as he wishes to have his action and the plaintiff's disposed of together, he must comply with the conditions necessary for that purpose." Langdell, Equity Pleading, § 118.

In the present ca se, the Glass Company made no attempt to invoke the action of the District Court in the bankruptcy proceedings. If it had the right to do so,

it did not seek the action of the bankruptcy court to state the account or make the settlement, and we have been unable to find any case, and none is called to our attention, in which it is held that simply because of the bankruptcy proceedings and the filing of the schedule and proofs of debt the set-off is automatically made between parties holding mutual credits. On the other hand, as the section indicates, and so far as we know, all the authorities hold, this section is not self-executing, but its benefit is to be had upon the action of the District Court, only when it is properly invoked, and that court has the primary duty of determining for itself whether there are "mutual debts or credits" that should be set off one against the other according to the true intent and meaning of the Bankruptcy Act.

We have no means of knowing what the court would have held had it been asked to order a set-off of the bankrupt's claim for damages against the creditor's claim upon a promissory note. (See *Libby* v. *Hopkins*, 104 U. S. 303; *In re Becker Bros.*, 139 Fed. Rep. 366; *Palmer* v. *Day*, 2 Q. B. 618; and the discussion of the subject in *Morgan* v. *Wordell*, 178 Massachusetts, 350.) We need not, therefore, inquire what that court would have done had its action been properly invoked, nor whether the Glass Company could have refused the amount of the composition and applied to the District Court for an order of set-off, nor what would be the right of the Glass Company had it refused to take the composition and undertaken to set off its debt when sued in this case. Indeed, the Glass Company in this suit denied and contested the validity of the plaintiff's claim. Nor need we discuss the right of the Glass Company to set off this claim had it tried to do so in the state court.

The question arose in that way in *Wasey* v. *Whitcomb*, 167 Michigan, 58, in which a suit was brought by the trustee in bankruptcy to recover upon a claim in the

state court. This was also the situation in *Wagner* v. *Burnham*, 224 Pa. St. 586. In the English case of *West* v. *Baker*, 1 Law Reports, Exch. Div. 44, the action was brought by one in whom, under a composition proceeding the court had by order vested the estate, such person having furnished the consideration to carry out the composition, a proceeding authorized by § 81 of the English Bankruptcy Act of 1869. It was held that in such action the effect of the order was to vest the property of the bankrupt in the plaintiff, subject to the right of set-off as to debts which would have been provable in bankruptcy. No such question arises here, as the plea in this case set up former adjudication in the Federal court, and no attempt was made to plead the right of set-off independently of such plea.

There is lacking in this case the first and most essential element of *res judicata;* namely, former judgment of a competent court, adjudicating the matter in controversy between the parties, yet *res judicata* in the bankruptcy court by the former proceedings was the sole contention of Federal right here put in issue.

As already said, it appears in this plea, that the Glass Company took the amount of the composition, twenty per cent. of its full debt, after the composition had been carried by the majority of the creditors, and approved by the court. If, as is now contended, set-off had been automatically worked between these opposing claims, one would substantially have satisfied the other, and the Glass Company would be in no position to claim or receive the dividend that it did receive in the composition. It certainly cannot maintain these inconsistent positions. This point was adjudicated under the former Bankruptcy Act, which for this purpose is substantially the same as the present one, in the case of *Hunt* v. *Holmes*, decided in the District Court of Massachusetts, 16 N. B. Rep. 101; *S. C.*, Fed. Cas. 6890, in which the opinion was by Judge

CUMBERLAND GLASS CO. *v.* DE WITT.    459

237 U. S. WHITE, Ch. J., HUGHES, LAMAR, McREYNOLDS, JJ., dissent'g.

Lowell, then District Judge. The learned judge ruled that a creditor who took his composition dividend after the composition was finally passed over his objections, making no attempt to have mutual claims adjusted and set off, thereby waived his claim of set-off; there being no evidence that he received the amount under protest or by mistake or under any other circumstance which would entitle him to a re-hearing or readjustment. In *In re Ballance*, 219 Fed. Rep. 537, where a creditor filed a petition to vacate a composition upon the ground of fraud, it was held that the petitioner, after a demurrer to his petition had been overruled, could not take the amount of the composition and also take the chance of proving the allegations of his petition to set aside the composition for fraud, but that he must make election as to which form of relief he would accept, and that he could not take his share of the composition as a partial payment and proceed to recover upon the unpaid balance of his claim.

So, in this case, although the composition was carried, as the plea avers, against the objection of the Glass Company, it made no attempt to have the set-off adjudicated in the bankruptcy court, made no opposition to the confirmation of the composition as was its right if it saw fit to do, and took and holds its proportion of the composition offered, in the same manner as other creditors.

As the only Federal question is presented because of the alleged *res judicata* in the District Court, and for the reasons stated that plea was not good, it follows that there is no error of a Federal nature in the judgment of the Court of Maryland, and the same is

*Affirmed.*

MR. CHIEF JUSTICE WHITE, with whom concurred MR. JUSTICE HUGHES, MR. JUSTICE LAMAR and MR. JUSTICE McREYNOLDS, dissenting.

I am unable to conclude that the plaintiff in error, the

Glass Company, was not secured the right by the Bankrupt Law of the United States to set off a claim held by it against the claim which was sued on by De Witt, the defendant in error, who was plaintiff below.    These are the undisputed facts: De Witt, a jobber in glass, thinking that the Glass Company for the purpose of making the profit itself, had wrongfully induced a person with whom he had a contract for the sale of a lot of glass bottles not to comply with the sale, thereby causing him a loss of a profit of $800, determined not to pay the Glass Company for merchandise which he had bought from it or to buy from it merchandise and not pay for it in order thus to be in a position to set off his claim in damages against the purchase price and thereby make himself whole.    De Witt was declared an involuntary bankrupt.    The Glass Company was stated in the schedules as a creditor on a note for $790.03 which it is established was the purchase price of merchandise bought from the company.    There was scheduled as an asset of the bankrupt estate an unliquidated claim against the Glass Company for damages, commissions and breach of contract stated as amounting to $940.    De Witt proposed a composition of twenty cents on the dollar which was sanctioned by the requisite vote of creditors, the Glass Company voting in the negative, and the composition, after being approved by the court, was carried out.    In doing so De Witt without liquidating the surrendered claim against the Glass Company for damages or attempting to have it set off against the claim of that company, paid the twenty per cent. upon the face value of the claim.    Thereupon deeming that by the composition he had been reinvested with full ownership of the claim for damages, De Witt brought this suit against the Glass Company to liquidate and enforce the same. The suit originally included an alleged sum for commissions, etc., but the demand was reduced before judgment to the asserted right to liquidate and recover the damages

alleged to have been occasioned by the cause previously stated. And it is to the judgment of the court below allowing the amount of damages claimed against the company without any deduction whatever for the contract price of the goods admitted to be due in the bankruptcy proceedings that this writ of error is prosecuted.

I am admonished that it may be that my view is obscured by what seems to me the wrongful result which the judgment below accomplishes, that is, allowing De Witt as a result of the bankruptcy to hold on to and enforce as against the Glass Company his surrendered claim for damages while at the same time treating the bankruptcy as having relieved him of the duty of paying for the goods bought; that is to say, not confining him to doing that which he contemplated when he refused to pay for the goods, to set off his alleged claim for damages against the price, but permitting him to obtain the goods of the company practically without paying for them and at the same time to recover the full amount of his damage claim.

The views which control my judgment in the case are covered by two general propositions which I state separately.

(a) *Did the bankrupt law confer upon the Glass Company the right to have the scheduled claim against it for damages when liquidated set off against the debt which it proved for the price of the goods by it sold?* That the comprehensive provisions of §§ 68a and b of the bankrupt law relating to set-offs and counter claims are coincident with the scope of the act and therefore give the power to the bankruptcy court to determine whether or not the right of set-off exists as between all and any claims required to be surrendered as assets of the estate on the one hand and all debts proved against the estate on the other is, I submit, self-evident, for to hold to the contrary would deprive the bankruptcy court of authority to exert its powers over matters to which its jurisdiction in the nature of things

must extend.   It is equally indisputable, as long since settled by this court, that in exerting its powers when occasion requires it as between all or any of the items of the active or passive side of the bankrupt estate it is the duty of the court of bankruptcy not merely to determine the right of set-off by strict common law principles, but to govern the subject by the broad doctrines of set-off as administered by courts of equity.   *Sawyer* v. *Hoag*, 17 Wall. 610.   It is also clear that in order to additionally accomplish the public purposes just stated the bankrupt act in some respects narrows the operation of set-off since it prevents it from automatically operating by subjecting it in every case to judicial control.   Under these principles there is no reason for doubting that the proved claim of the Glass Company against the bankrupt estate was subject under the law to be set off against the scheduled claim held by the estate against the Glass Company whenever the latter claim was so liquidated as to enable the set-off to be made and that the duty of accomplishing this essential result by the terms of the statute primarily rested upon the bankruptcy court.   I say the terms of the statute since it in express words commands that the set-off for which it provides shall be accomplished to the end that a distribution shall be made not upon the original claims, but upon the balances resulting from carrying out the commands of the statute as to set-off.   This being true, the question at once arises:

(b) *Was the effect of the composition to prevent the set-off or to relieve the duty concerning it expressly commanded by the statute?*

The only theory upon which this question can be answered in the affirmative must be the conception that a composition completely terminates bankruptcy and that therefore whatever rights or duties arose from the bankrupt law which were not fully executed when the composition took place passed out of existence and therefore the

rights granted by the composition have no ancestral relation to the prior bankruptcy proceedings. But to say this is to misconceive the nature of composition proceedings which, as this court has long since pointed out, are but a part of bankruptcy and a means not for destroying the express command of the bankrupt law, but for giving effect to its provisions and rendering them more efficacious for accomplishing the just ends which they have in view. *Wilmot* v. *Mudge*, 103 U. S. 217. This being true, what is the situation? The bankrupt estate had a scheduled claim against the Glass Company which was unliquidated and the Glass Company had a proved claim against the estate which was liquidated. The bankrupt proposed by composition to have the assets turned over to him on paying a percentage on the claims due by the estate. By the very terms of the bankrupt act the duty was to set off the one against the other so that only the balance between them would be due on the one side or the other. But as the claim held by the estate was unliquidated and this could not be done without liquidation, it follows either that the acceptance of the composition and turning over the estate without liquidation was an abandonment of the unliquidated claim or that it was transferred to the bankrupt subject to the duty to set off whenever as a result of a liquidation following the composition the condition arose which made it possible to obey the express command of the statute. One or the other of these conclusions, I submit, is absolutely required by the plain terms of the statute unless it is to be recognized that the bankrupt law provides that a bankrupt may discharge himself by bankruptcy from all that he owes one of his creditors and yet by operation of that statute retain and after the bankruptcy enforce in his own right all the claims he had against such creditor. But the subject does not depend for its solution upon original reasoning since it is well demonstrated by authority.

Certain is it that the provisions as to composition which were first enacted by Congress in 1874, (§ 17, ch. 390, 18 Stat. 178, 182) as an amendment to the existing bankruptcy act, were in substance taken from the English bankrupt act of 1869. *In re Scott*, Fed. Cas. No. 12,519.

In *West* v. *Baker*, 1 Ex. D. 44, the facts were these: West was adjudicated a bankrupt and a composition was accepted by his creditors and the bankruptcy was annulled. Under a provision of the bankrupt act on the approval of the composition the property was turned over to a trustee, presumably for his security as he had advanced the sum necessary to enable the bankrupt to pay to his creditors the amount offered in composition. This trustee then in the name of the bankrupt sued one Baker to recover an amount claimed to be due from Baker for work and labor done for him by West before the bankruptcy. By way of defense it was pleaded that before the adjudication in bankruptcy West was indebted to Baker for debts and damages which were provable in bankruptcy against the bankrupt estate and which could have been set off in bankruptcy against the claim of West and therefore the defendant, Baker, was entitled as a defense to the suit to set off his claim against the one which the trustee in the name of West sought in the suit to enforce. A demurrer to the plea was overruled, the views of the court being stated as follows:

"Kelly, C. B. . . . The whole estate of the bankrupt was undisposed of; and the Court has power under the 81st section, in the case of an adjudication being annulled, to order that the property of the debtor shall vest in such person as the Court may appoint, or, in default of such appointment, revert to the bankrupt. This latter has not been done; but the court has transferred the whole estate of the bankrupt to the plaintiff, no doubt in consideration of the plaintiff having guaranteed a dividend of 7s. 6d. in the pound. Does this transfer

CUMBERLAND GLASS CO. *v.* De WITT.  465

237 U.S.  White, Ch. J., Hughes, Lamar, McReynolds, JJ., dissent'g.

entitle the plaintiff to recover debts freed from the right of the debtor to set off such claims as the present? I think not; because in bankruptcy the debtor could have set off this very claim; and if the Court has transferred to the plaintiff all the authority itself had, that was to sue the defendant subject to the right to set off not only any specific sum, but any claim to unliquidated damages provable under bankruptcy. If this were otherwise, much injustice would be done. I apprehend the substance of the clauses of the Act is, that what passed to the plaintiff was a right to receive debts, but subject to the right to set off counter claims whether of specific sums or of unliquidated damages provable in bankruptcy.

"Cleasby, B. . . . The question is, whether the effect of the 28th section was to alter the status of the defendant because of the substitution of a scheme of settlement for the bankruptcy. On looking at the section the effect appears to be that, instead of the trustee dealing with the estate, the creditors shall be at liberty to accept a composition. This, though accompanied by the annulling of the bankruptcy, does not take the matter out of the Bankruptcy Court, so as to prevent the general rules of bankruptcy applying, or alter the position of the parties except so far as it may be altered by the agreement they have come to to take the composition instead of the estate. By § 28 the provisions of a composition or general scheme made in pursuance of the Act may be enforced by the Court in a summary manner, and are to be binding on all the creditors so far as relates to any debts due to them and provable under the Bankruptcy Act. That clearly shows that the Bankruptcy Court still retains the scheme under its control, and therefore it is subject to the ordinary rules of that court as to set-off."

In *Ex parte Howard National Bank*, 2 Lowell, 487, *S. C.*, Fed. Cas. No. 6764, without going into detail, the case was this: There was a bankruptcy and a composition.

466                OCTOBER TERM, 1914.

WHITE, Ch. J., HUGHES, LAMAR, McREYNOLDS, JJ., dissent'g. 237 U. S.

After the composition the bankrupt sought to enforce a claim which had passed to him in virtue of the composition and was confronted with an alleged right to set off as against such claim on his part, a claim against him which had been in the bankruptcy a claim against the estate. The court under these conditions in upholding the right to set-off directed attention to the provisions of the bankrupt law on the subject and to its command that only the balance should be paid and the inherent relation which that requirement of the act created between the claims scheduled in the bankruptcy on the one hand and proved on the other and the character which was affixed to them for the purpose of set-off even after a composition had been ordered. The court said:

"I have treated this as a case between an assignee and a creditor, because the bankrupt in a composition case stands, as to set-off, in the position of an assignee; if none has been appointed." In other words, treating the allowance of the composition as having, so to speak, irrevocably stereotyped the rights of the parties in conformity with the bankrupt law and to the end that its purposes might be carried out, the bankrupt holding under the composition was treated for such purposes as but an assignee in bankruptcy and therefore so far as set-off was concerned as having no greater right under the composition than existed in the bankruptcy in favor of the estate at the time the composition was made.

These cases as well as the principles upon which they rest clearly make manifest the fact that it was not only within the power but it was the duty of the court below as an inevitable result of the liquidation of the claim against the Glass Company which it made to treat the set-off as accomplished since that result was necessary to give vitality to the order of composition and to secure the right of set-off which inhered in the nature of the title given by the bankruptcy court to the bankrupt as the

CUMBERLAND GLASS CO. *v.* De WITT.     467

237 U. S. White, Ch. J., Hughes, Lamar, McReynolds, JJ., dissent'g.

result of the composition. From this conclusion it necessarily follows that the duty to enforce the set-off integrally inhered in the order and judgment which sanctioned the composition since otherwise the order would have embodied within itself a refusal to obey and give effect to the express command of the bankrupt law as to the nature and character of what could be transferred under the composition. And this consequence is obvious when it is borne in mind that the result of the composition was to recognize and fix the right of set-off although not denying the power to liquidate as a means of carrying out the established right of set-off. This being true, it is also true that the moment the court below liquidated the claim, in and by virtue of the order of composition the duty arose to give effect to the right of set-off established by the order of composition in conformity with the express command of the bankrupt law. And this fully answers the suggestion that as the right to the set-off was not asserted *eo nomine* but the decree in composition was pleaded as *res judicata*, therefore there was no denial of the right of set-off even if secured as the result of the composition. Certainly it must be that the plea of the decree in composition as *res judicata* was a plea advancing the right which that decree necessarily secured.

This in my judgment leaves it necessary only to consider the assertion that even although the right was secured by the bankrupt law and even although that right was preserved by the composition and inhered in the very nature of the title which the composition passed, it nevertheless does not here exist because of what was done at the time the composition was adopted. This rests upon the theory that as the Glass Company took the dividend upon its claim and did not insist upon a liquidation of the claim in damages held by the bankrupt estate, it therefore waived any right to future set-off concerning said claim. I must confess I find difficulty

in precisely grasping the proposition. The Glass Company disputed the claim in damages and the duty of liquidation was on the bankrupt or the bankrupt estate but not on the Glass Company, and if waiver or estoppel was the result of what was done, the waiver was not as to the right of the Glass Company, but as to the claim for damages and against the estate which held it. Indeed, the tender to the Glass Company of the full percentage due on its claim without liquidating the claim for damages against it so as to accomplish a set-off, if waiver is to control, was a waiver by the bankrupt of a right to liquidate and assert his claim in the future. The proposition otherwise stated is this: If the composition is to be considered as having irrevocably excluded the right to set-off, then of course the consequences of the failure to ask for it must fall upon the one holding the unliquidated claim and not be cast upon the one who had no duty or concern with that subject until the liquidation was accomplished, especially in view of the payment made of the percentage upon the amount proved, a payment which was only consistent with the theory that the unliquidated claim was abandoned. If on the other hand it be considered in consonance with the principles and authorities to which I have referred that the composition did not terminate the bankruptcy but that a liquidation for the purpose of set-off could thereafter be accomplished, then it clearly follows that the effect of the bankruptcy and of the judgment of composition was to fix and secure that right and it cannot be held consistently with the statute that the composition proceedings taken conformably with the statute were a waiver of the right which those proceedings inevitably secured and made effective.

*For these reasons I dissent, and am authorized to say that Mr. Justice Hughes, Mr. Justice Lamar, and Mr. Justice McReynolds concur in this dissent.*