**WHEELING STRUCTURAL STEEL CO. v. MOSS (two cases).**

**Nos. 3300, 3390.**

Circuit Court of Appeals, Fourth Circuit.

Dec. 2, 1932.

Wright Hugus, of Wheeling, W. Va., for appellant.

Robert Burnett, of St. Louis, Mo. (Henry H. Stern, of Jefferson City, Mo., and B. L. Liberman, of St. Louis, Mo., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

Wheeling Structural Steel Company, a corporation of West Virginia, filed a petition in the District Court in the bankruptcy proceedings of Joel E. Moss, a citizen of that state, praying that an order be entered directing the trustee in bankruptcy to pay to it a balance of cash amounting to $8,000 remaining in his hands after payment of all the debts of the estate and costs of the proceeding. Shortly thereafter, the bankrupt filed a petition praying that the trustee be ordered to pay the aforesaid surplus to him. The

trustee, having been notified of these conflicting claims, had already prayed the court in his report of receipts and disbursements to hear the evidence and decide the controversy between the petitioners, and the case proceeded between them as if it were an interpleader in equity. The referee, after hearing, ordered that the petition of the steel company be denied, and that the trustee pay the surplus in his hands to Moss. The District Judge, upon review, approved the order of the referee, and the steel company appealed, proceeding under section 24b, by petition in this court, and also under section 25a of the National Bankruptcy Act (11 U. S. C. §§ 47 (b), 48 (a), 11 USCA §§ 47 (b), 48 (a).

Moss had formerly been the president and general manager of the steel company and by reason of certain actions on his part, which apparently included a defalcation, the corporation became his largest creditor. He filed a voluntary petition in bankruptcy, listing debts of $286,148.16, exclusive of the debt due the corporation, and assets, real and personal, valued at $569,643.67, and was duly adjudicated a bankrupt by decree of the court. Prior thereto, the steel company had asserted a claim against him in the amount of $550,000. Subsequent to the adjudication in bankruptcy, negotiations between representatives of the company and representatives of the bankrupt were undertaken, and a settlement of the amount of the claim was arrived at and two memoranda of agreement were drafted. The execution of these agreements and the interpretation placed upon them by the steel company are not conceded by Moss, but for the purposes of this case, we shall assume, without deciding, that the company's position outlined in the following recital is well founded:

It was agreed by the parties in the first memorandum that Moss should get certain scheduled assets, including $10,000 in cash, valued in all at $130,922; and that the corporation should pay certain claims, including notes in the sum of $65,200 held by the banks, retaining the collateral deposited therewith, and should give up certain claims against the bankrupt, including the claim of defalcation, and should get all the other assets scheduled, including $34,000 in cash. The bankrupt agreed to pay all other indebtedness and the costs of the bankruptcy proceeding. In order to carry the arrangement into effect (spoken of in the second memorandum as a composition to be submitted to the District Court for approval), it was provided that the trustee should make prompt sale of all the assets, and that the steel company should become the purchaser at a price sufficient to pay in cash all of the creditors, including itself, in full; and that the steel company should retain as its own all of the assets except those allotted under the agreements to Moss, and that the latter should be held by the steel company until the period allowed by the statute for the filing of claims in bankruptcy should have expired, with power, however, to sell any part of them to reimburse itself for any amounts it might have advanced to the trustee to pay scheduled creditors and costs, if Moss should not pay these amounts within thirty days after the expiration of the period.

The trustee petitioned the court for an order of sale, and the court ordered a public sale of all of the saleable assets, with the provision that any creditor who should become the successful bidder might use his claim as part of the purchase price provided there should be sufficient cash in the trustee's hands to pay all the creditors in full, and the costs of the proceeding. In pursuance of this order, the property was sold at auction to the steel company for $377,357.52; and the trustee reported the sale to the court, and it was duly confirmed. In the meantime, the steel company had filed its claim with the referee amounting to $366,357.77, and it had been allowed. This claim was used in accordance with the order of sale as part of the purchase price, and the balance, amounting to $10,999.75, was paid in cash to the trustee. All of the creditors were paid in full and also all of the costs of the proceeding, and there now remains in the hands of the trustee the sum of approximately $8,000.

After the settlement had been made between the steel company and the bankrupt, the District Judge and the referee were informed by counsel that an agreement had been made concerning the claim of the steel company, and the District Judge said that if all other creditors were taken care of, the arrangement was satisfactory to him. The trustee was also informed that an agreement had been made, and he was present at one meeting of the attorneys of the parties. The agreements, however, were not submitted to the court for approval, and were not filed as part of the proceedings. The judge and the trustee were not acquainted with the details of them, and the trustee did not become a party thereto, or assume any responsibility for their performance. After the sale had taken place, the steel company paid certain notes of the bankrupt, secured by collateral, and delivered them to the trustee, retaining the collateral without objection on his part;

but there is no evidence that the collateral exceeded in value the amount of the obligations.

The steel company has performed the agreements on its part, and still retains the property allotted to Moss because he has not made the payments to which he agreed. The steel company has power to sell this property and to reimburse itself from the proceeds, but it has not done so. The inference is that it fears that the property is not now of sufficient value to pay the balance of $38,500 which it claims to be due at this time, and it therefore seeks an order of the court to apply the money in the hands of the trustee to the payment of the debt.

■■■ The case has been tried as if it were one solely between the steel company and Moss, the trustee having no interest in the result. But it is not contended by the appellant that the District Court had jurisdiction to try the controversy, arising as it does out of breach of contract between citizens of the same state, unless it falls within the provisions of the National Bankruptcy Act. As a court of bankruptcy, the District Court proceeded under subsection 7 of section 2 of the act, 11 U. S. C. § 11 (7), 11 USCA § 11 (7), to reduce the estate to money and to distribute it to the creditors; and since the surplus remaining is in custodia legis, the court has power to determine its disposition in the subsequent administration of the estate. Lazarus, Michel & Lazarus v. Prentice, 234 U. S. 263, 34 S. Ct. 851, 58 L. Ed. 1305. The jurisdiction of a court of bankruptcy, however, is of a limited character, statutory in its origin, and it covers only such matters as are specified in the statute, and they must be dealt with as the statute directs. In re Hollins (C. C. A.) 229 F. 349; In re Stearns & White (C. C. A.) 295 F. 833; Jones v. Kansas City Custom Garment M. Co. (C. C. A.) 1 F.(2d) 649.

■■■ The appellant suggests that the dealings between the parties in this case, taking into consideration that some information about them was given to the District Judge and the trustee, amount to a composition of the bankrupt with his creditors, and that the District Court therefore has power to decide the controversy which has arisen between the bankrupt and one of his creditors in carrying the composition into effect. Section 12 of the Bankruptcy Act (11 U. S. C. § 30 [11 USCA § 30]), provides that a bankrupt, either before or after adjudication, may offer terms of composition to his creditors and that an application for the confirmation of a composition may be filed in the court after it has been accepted in writing by a majority in number and amount of all the creditors, and the consideration to be paid by the bankrupt to the creditors has been deposited in a place designated by the judge. If the judge confirms the composition, the consideration is distributed, as the judge shall direct, and the case in bankruptcy is dismissed; but when the composition is not confirmed, as provided in the statute, the estate is administered in bankruptcy in the usual way. The effect of a successful composition is to supersede the bankruptcy proceedings and revest the bankrupt with title to all of his property free from the claims of his creditor. Section 70f of the Bankruptcy Act, 11 U. S. C. § 110 (f), 11 USCA § 110 (f); Cumberland Glass Mfg. Co. v. DeWitt, 237 U. S. 447, 35 S. Ct. 636, 59 L. Ed. 1042. It is manifest that there was no such composition in this case. No offer of composition was submitted to the creditors, no confirmation thereof was prayed or received from the court, and the parties did not proceed as if the title to the property, real and personal, had become revested in the bankrupt but as if it remained vested in the trustee. For the agreement contemplated that the property should be sold and conveyed by the trustee, and this was done under the formal order of court. The estate has been administered in bankruptcy in accordance with the method prescribed in the statute, and the bankruptcy proceedings have not been superseded. Remington on Bankruptcy (3d Ed.) § 3073, states that there seems to be no objection to informal compositions, so far as the law is concerned, but they are full of risks to the parties. This statement is far from an expression of opinion, as the appellant's argument implies, that a court of bankruptcy has jurisdiction to determine all controversies which may arise between the parties in the course of an informal settlement outside the purview of the bankruptcy law. See Luxury Fruit Company v. Harris (C. C. A.) 217 F. 740; In re Jacobson (C. C. A.) 239 F. 79; In re Malkan (C. C. A.) 261 F. 894.

■ Nor was there a compromise of a controversy under the provisions of section 27 of the act, 11 U. S. C. § 50 (11 USCA § 50) which the District Court had authority to enforce. That section provides that the trustee, with the approval of the court, may compromise any controversy arising in the administration of the estate. In the instant case, the trustee was not a party to the settlement or compromise between the bankrupt and the steel company, although he had some information in regard to it; and the compromise

was not submitted to the court for its approval, although the court was told that an agreement had been made. It is obvious that neither the court nor the trustee took any responsibility in the agreements into which the parties entered, and it would be contrary to the terms of the act and to the demands of good practice in the administration of bankrupt estates to require the court or the trustee to recognize agreements of settlement to which the trustee is not a party and which the court does not confirm.

The appellant also relies on section 57k of the act (11 U. S. C. § 93 (k), 11 USCA § 93 (k), which provides that claims which have been allowed may be reconsidered for cause, according to the equities of the case before but not after the estate has been closed. The steel company's claim of $366,357.74, arising out of transactions before bankruptcy, was allowed by the referee and used by the steel company as a credit on the purchase price of the property. The proposal is that the present proceeding should be regarded as a reconsideration or an amendment of this claim, so as to include an obligation of the bankrupt springing from the agreements of settlement. The insuperable objection to this suggestion is that the additional claim now advanced arose after the time of the filing of the petition in bankruptcy. Section 63a (4) of the act, 11 U. S. C. § 103 (a) (4), 11 USCA § 103 (a) (4), as interpreted by the Supreme Court, provides that debts founded on a contract express or implied may be proved and allowed against the estate if they are absolutely owing at the time the petition is filed. So in Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664, it was held that a promise by a bankrupt made between the petition and the discharge, to pay the balance of his provable debt to a creditor who had advanced money to enable him to effect a composition with his creditors, did not constitute a provable claim because it was created after the filing of the petition; and that therefore the obligation was not included in the discharge in bankruptcy, and could be enforced in a suit in a state court. Generally speaking, the obligations that may be filed against the bankrupt's estate, and from which he is discharged, as well as the transfer of his estate to the trustee for the benefit of creditors, relate to the inception of the proceedings. See section 70

of the act, 11 U. S. C. § 110 (11 USCA § 110). After that date, the property acquired by the bankrupt is free from the attacks of his antecedent creditors and he is competent to enter into any new engagement. It follows that a claim like that of the appellant's, arising after the petition in bankruptcy is filed, is not a provable claim and may not be enforced against the estate.

The Bankruptcy Act does not specifically provide for the disposition of such a surplus as exists in this case, but section 66b, 11 U. S. C. § 106 (b), 11 USCA § 106 (b), points the way which should be followed. It provides that dividends remaining unclaimed for one year shall be distributed to the creditors whose claims have been allowed but not paid in full, and after such claims have been paid in full, the balance shall be paid to the bankrupt. So it has been held that the act contemplates the return of a surplus after the payment in full of all debts to the bankrupt under general equitable principles. Questions have arisen under section 66b as to whether in the case of a surplus, interest subsequent to the filing of the petition should be paid on provable claims before the surplus is turned over to the bankrupt, Johnson v. Norris (C. C. A.) 190 F. 459, L. R. A. 1915B, 884; In re John Osborn's Sons & Co. (C. C. A.) 177 F. 184, 29 L. R. A. (N. S.) 887; and whether claims should be recognized which have not been proved during the statutory period for filing claims. In re Silk (C. C. A.) 55 F.(2d) 917, 918. But there is no authority for holding that a claim which has arisen subsequent to the filing of the petition, and is therefore not provable, may share in the surplus.

Since the judgment below amounted to a rejection of a debt or claim against the estate, the appeal lay under section 25a of the act. The appeal taken under section 24b is therefore dismissed, and in the appeal under section 25a the judgment of the District Court is affirmed.

NORTHCOTT, Circuit Judge (dissenting).

I cannot concur in the holding that a court of bankruptcy does not have jurisdiction to settle a controversy, of the nature of the one here considered, relating to a fund in the custody of the court.