In re U. S. N. CO., INC., Bankrupt.

Herbert RUBIN, Receiver of the Estate of the Bankrupt, Plaintiff,

v.

VAN DAM CHECK CASHER et al. (Parties set forth in Schedule A annexed to Complaint), Defendants.

Bankruptcy No. 77 B 130.

United States Bankruptcy Court, S. D. New York.

Dec. 13, 1979.

**MEMORANDUM & ORDER**

JOHN J. GALGAY, Bankruptcy Judge.

The dispute in this case followed the bankruptcy of U.S.N. Co., Inc. (USN), a company licensed to sell money orders in New York. Defendant Crest Pharmacy, Inc., (Crest), who sold money orders as an agent of USN, contends that it is entitled to set off its commissions on the sale of money orders from funds it owes USN on money order sales. This court holds that the set-off is valid.

On January 13, 1965, the parties executed an agreement whereby Crest became an agent of USN. The agreement, called the "Trust Agreement," was a form contract used by USN and its agents. It provided in relevant part:

2. Agent accepts appointment as such agent and agrees (a) to receive and hold in TRUST for U.S.N. CO., INC. money orders delivered to Agent by U.S.N. CO., INC. (b) to sell and issue such money orders (c) to hold for the account of and IN TRUST for U.S.N. CO., INC., and entirely separate and apart from other funds, all money received by Agent representing the face amount of money orders sold by Agent or of utility or other bills collected by Agent; (d) to prepare settlement reports of and to remit to U.S.N. CO., INC., on demand or otherwise in accordance with instructions of U.S.N. CO., INC. all such money received by Agent, and (e) to deliver to U.S.N. CO., INC., on demand any unsold money orders.

3. Agent shall collect such charges for the sale of money orders and for the collection of utility and other bills as may be established by U.S.N. CO., INC. from time to time, shall retain as Agent's commission that portion of such charges as U.S.N. CO., INC. shall specify, which commission on Money Orders shall be based on Agent's annual volume of sales, and shall pay to U.S.N. CO., INC., the balance of such charges simultaneously, with the delivery, hereinabove provided for, of the principal amounts collected.

6. This agreement (a) may not be assigned by Agent without the written consent of U.S.N. CO., INC., and (b) may be modified only by an agreement in writing

signed on behalf of U.S.N. CO., INC. by an officer or District Office Manager. No other employee of U.S.N. CO., INC. has authority to modify or waive any term of this agreement.

8. Agent agrees that failure of U.S.N. CO., INC. to insist in one or more instance upon strict performance by Agent of any term, provision, rule, regulation or instruction hereof, or hereafter made a part hereof, shall not be construed as a waiver or relinquishment of any such term, provision, rule, regulation or instruction but the same shall continue and remain in full force and effect.

In practice, Crest remitted all proceeds to USN and was paid its commissions plus interest on them at a later time. This arrangement, which was not documented by either party, was apparently an investment scheme engineered by USN in which more than one agent of USN participated.

USN filed a petition in bankruptcy on January 20, 1977 under I–VII of the Bankruptcy Act. Shortly thereafter, Herbert Rubin, the plaintiff herein, was elected Trustee. On February 15, 1977, this Court ordered the numerous defendants in the USN bankruptcy, among them Crest, to remit to the Trustee all money and property of the bankrupt in their control. Prior to this order, Crest, in settling its account with USN withheld $264.71 which it claimed as commissions. On June 19, 1978, the plaintiff requested an inquest to obtain a judgment under Bankruptcy Rule 921 against certain defendants, including Crest, for outstanding indebtedness to USN on sales of money orders. At the inquest, Crest asserted that it was entitled to set off commissions from revenue due USN on sales of money orders.

In holding this set-off valid, this Court decides the first case of a number of set-off cases following the USN bankruptcy in which commissions are the central focus of the dispute. The outcome .and reasoning here will probably govern the disposition of the remaining similar cases.

The statutory provision governing set-off in bankruptcy cases is Section 68 of the Bankruptcy Act. Section 68 provides:

(a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

(b) A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and the allowable under subdivision g of Section 57 of this Act; or (2) was purchased by or transferred to him after the filing of the petitioner or within four months before such filing, with a view of such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.

■■■ The first requirement of set-off is mutuality of debts and credits between the parties. Though confusion exists as to what mutuality entails, mutuality usually does not exist when the party asserting the set-off holds the funds of the other party in a fiduciary capacity or in trust. In such circumstances the parties are not standing in the same capacity because "the trust res is not owing to the bankrupt but rather is owned by it." *In re Bob Richards Chrysler-Plymouth Corp.*, 473 F.2d 262 (9th Cir. 1973) *cert. denied*, 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed.2d 145 (1973). This Court, in *In re Universal Money Order Co.*, 3 Bankr.Ct.Dec. 905 (1977), held that mutuality of debts and credits, and thus the right of agents to set-off, did not exist between USN and any of its agents because the agents held funds collected from the sale of money orders in a fiduciary capacity as a trust fund for USN. This Court, however, will not apply *Universal* blindly. The facts in *Universal* are different from the facts in this case. In Universal, Fort Monmouth Credit Union claimed a set-off for reimbursements which it issued after the bankruptcy on defaulted money orders. Fort Monmouth had no legal obligation to issue the refunds and by doing so was ignoring Court orders. In contrast, Crest desires to set off a claim which USN had a legal obligation to recog-

nize. Moreover, a careful examination of the contract between the parties leads to the conclusion that the commissions were outside the trust to which the *Universal* guidelines apply and that, under the "Trust Agreement," Crest had an absolute right to its commissions.

Paragraph "3" of the "Trust Agreement" expressly provided that the agent had a right to retain commissions, a percentage of the revenue collected from money order sales, in settling its account with USN. In view of paragraph "2" of the agreement, which said that all monies collected from money order sales were to be held in trust, it is ambiguous whether the commissions were part of the trust monies from which *Universal* enjoins set-off. In resolving an ambiguity such as this, it is axiomatic that when the contract is a form supplied by one of the parties, it is to be construed against that party should a question arise to interpretation or effect. 10 N.Y.Juris. Contracts Section 223, *Johnson v. Werner*, 63 A.D.2d 422, 407 N.Y.S.2d 28, 31 (1st Dep't 1978), *Evelyn Bldg. Corp. v. City of N. Y.*, 257 N.Y. 501, 178 N.E. 771 (1931). The "Trust Agreement" here was a form contract supplied by USN to its agents. If the contract is construed against USN, paragraph "3", which is more favorable to Crest than paragraph "2", detailed the trust parameters. Under paragraph "3" Crest had an absolute right to its commissions, i. e. the commissions were outside the trust USN created. Crest's deferment of commissions under the investment scheme did not negate Crest's right to the commissions in settling its account with USN after the bankruptcy. This is especially true in view of paragraph "8" of the agreement, which provided that the original terms remained in effect even if not strictly complied with at all times.

In order for USN to recover a theory of no mutuality of debts and credits, this Court would have to find that the investment scheme was a valid modification of the original contract so that all funds, including commissions, were part of the trust monies held in a fiduciary capacity for USN. No party presented written evidence supporting this conclusion as required for a valid modification by paragraph "6" of the "Trust Agreement." This Court is aware of authority which says that part performance which unequivocally refers to a modified contract will validate the modified contract even in face of a clause such as paragraph "6" which excludes modification except by a writing. *Rose v. Spa Realty Associates*, 42 N.Y.2d 338, 397 N.Y.S.2d 922, 366 N.E.2d 1279 (1977). This case, however, does not fall under that line of authority. In *Rose*, where the orally modified contract was enforced, the party seeking enforcement expended substantial sums of money in justifiable reliance on the modified contract. *Id.* In contrast, USN did not change its position in reliance on the investment scheme so that it would be inequitable not to enforce it now. Moreover, part performance has not validated a modified contract when a party seeks to disaffirm multiple provisions of a form contract it drafted. USN drafted provisions "6" and "8" of the "Trust Agreement" presumably for its benefit. This Court will not now disaffirm those very paragraphs to allow USN to recover.

■ The set-off also meets the second statutory requirement, Section 68b, which forbids set-offs which are voidable preferences or which were effected within four months of the bankruptcy with a view towards set-off. Section 68b(1) demands that set-off meet the test of Section 57g which forbids voidable preferences unless the creditor surrenders the preference. A voidable preference is in short, a transfer of the property of a debtor to the benefit of one creditor over another. Under the "Trust Agreement" the commissions were not the property of the debtor. Therefore, there is no voidable preference here. Also, nothing in the record suggested that the claims at issue were acquired with a view towards set-off which would violate Section 68b(2).

■ The requirements of Section 68 are discretionary not automatic. A bankruptcy court determines the right to set-off in accordance with general principles of equity. *Cumberland Glass Manufacturing Co. v.*

*DeWitt and Co.*, 237 U.S. 447, 455, 35 S.Ct. 636, 639, 59 L.Ed. 1042 (1915). A court can disallow set-off even if a party meets the statutory requirements. *Id.* In a reorganization setting, courts disallow set-offs by creditors of a bankruptcy entity in an attempt to help the entity back on its feet. See *Baker v. Gold Seal Liquors*, 417 U.S. 467, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974), *In Preferred Surfacing v. Gwinnett Bank*, 400 F.Supp. 280 (N.D.Ga.1975). As this is not a reorganization setting, no such consideration militates against awarding Crest the set-off in this case.

Therefore, it is ordered that the plaintiff's request to obtain a judgment against Crest for outstanding indebtedness to USN be dismissed.

It is so ordered.