**In re TENNESSEE PUB. CO.**

**TENNESSEE PUB. CO. v. AMERICAN NAT. BANK et al.**

**CARPENTER v. TENNESSEE PUB. CO.**

**Nos. 7266, 7267.**

Circuit Court of Appeals, Sixth Circuit.

Feb. 13, 1936.

ALLEN, Circuit Judge, dissenting in part.

———◆———

Lewis S. Pope and Albert Roberts, both of Nashville, Tenn. (Lewis S. Pope, White & Howard, and Roberts & Roberts, all of Nashville, Tenn., on the brief), for Tennessee Pub. Co.

Cecil Sims, of Nashville, Tenn. (Bass, Berry & Sims, of Nashville, Tenn., on the brief), for American Nat. Bank and Paul M. Davis.

H. G. Fowler, of Knoxville, Tenn. (J. A. Fowler and S. F. Fowler, both of Knoxville, Tenn., on the brief), for receiver C. O. Carpenter.

Charles C. Trabue and Thomas H. Malone, both of Nashville, Tenn., for M. & O. Paper Co.

Pitts, McConnico, Hatcher & Waller, of Nashville, Tenn., for Ingram and Bradford.

W. E. Norvell, of Nashville, Tenn., for American Union Bank and others.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The main appeal is from a final order and decree dismissing the debtor's petition and plan for corporate reorganization under the provisions of section 77B of the Bankruptcy Act, as amended (11 U.S.C.A. § 207). The appeal was allowed by the District Judge, but the debtor later, conceiving the appeal to be governed by section 24b, as amended (11 U.S.C.A. § 47 (b), filed a petition with this court for leave. It appearing that the petition was timely, we treat the appeal as having been allowed, and an order to that effect may be entered. The cross-appeal is from a final order incorporated in the decree overruling a motion to dismiss the debtor's petition on the ground that it was not filed in good faith as provided by the statute. The cross-appeal was likewise

allowed by the District Judge, but no petition, timely or otherwise, for its allowance here was presented. A motion to dismiss the cross-appeal is before us. Regarding the main appeal as properly allowed under section 24b, Vitagraph, Inc., v. St. Louis Properties Corp., 77 F.(2d) 590 (C.C.A.8); Credit Alliance Corp. v. Atlantic, Pacific & Gulf Refining Co., 77 F.(2d) 595 (C.C.A.8); Campbell v. Alleghany Corp., 75 F.(2d) 947, 955 (C.C.A.4); Humber v. Bankers' Trust Co., 70 F.(2d) 265 (C.C.A.6), and regarding it also, as will later appear, as raising the question generally of the validity of the decree, whether based upon valid or invalid grounds, we give no consideration to the cross-appeal, and it may be dismissed.

The Tennessee Publishing Company, designated as the debtor, according to the statute, had for many years published both a morning and an evening newspaper in Nashville, Tenn. On March 3, 1933, by general creditors' bill, its affairs were placed in charge of a receiver appointed by the District Court. The proceedings were filed by appellee Carpenter, receiver of a closed bank, which held $28,000 of the debtor's bonds, which were part of an issue of $750,000 dated November 1, 1928. The rate of interest borne by the bonds and their maturity dates nowhere appear, but they were secured by a deed of trust executed by the debtor, which provided that upon default in the payment of interest or principal the security might be foreclosed and sold at public auction, either through proceedings in equity or by advertisement.

The equity bill averred operating losses sustained by the debtor during the years 1929 to 1932. Losses continued during the receivership, but at a reduced rate. The usual reference to a master for consideration of claims followed, with the result that claims were filed in the total amount of approximately $1,500,000. A final hearing was set for June 6, 1935, and it was then the reasonable expectation of all parties in interest that a sale of assets would be ordered and the receivership terminated.

On June 5, 1935, Carmack, son of a former editor of the debtor's papers, acquired from the Leas, then its owners, all of the debtor's common stock. He immediately had himself elected president, and instituted the debtor proceedings here involved under section 77B. His first reorganization plan being objected to by the various classes of creditors, a second and a third plan of reorganization with modifications thereof followed. All were vigorously opposed by each interest concerned save for approval by a relatively small number of unsecured creditors. Not any of the bondholders gave assent to the plans proposed, and about 50 per cent. of the unsecured creditors have affirmatively opposed all reorganization plans.

Section 77B provides for a scheme of corporate reorganization similar in many of its aspects to that provided for the reorganization of railroads engaged in interstate commerce by section 77 (11 U.S.C.A. § 205), discussed and held constitutionally valid in general scope and application in Continental · Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & Pacific Railway Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110. It provides that upon the filing of a petition for reorganization the court shall enter an order approving its filing if satisfied that the petition complies with the section and has been filed in good faith. The plan of reorganization shall include provisions modifying or altering the rights of creditors generally, or any class of them, either through the issuance of new securities or otherwise. Subsection (e), of section 77B, 11 U.S.C.A. § 207 (e), in so far as pertinent, is as follows:

"A plan of reorganization shall not be confirmed until it has been accepted in writing, * * * and such acceptance shall have been filed in the proceeding by or on behalf of creditors holding two thirds in amount of the claims of each class whose claims have been allowed and would be affected by the plan: * * * Provided, however, That such acceptance shall not be requisite to the confirmation of the plan by any creditor or class of creditors (a) whose claims are not affected by the plan, or (b) if the plan makes provision for the payment of their claims in cash in full, or (c) if provision is made in the plan for the protection of the interests, claims, or liens of such creditor or class of creditors in the manner provided in subdivision (b), clause (5), of this section."

In so far as the reorganization permitted by section 77B requires approval by two-thirds of the creditors of each class and in so far as such approval is

not requisite to confirmation from creditors whose claims are not affected or for the payment of which cash is provided, 77B follows substantially the provisions of section 77. It departs from that section in clause (c) of the proviso, which makes approval of creditors unnecessary "if provision is made in the plan for the protection of the interests, claims, or liens of such creditor or class of creditors in the manner provided in subdivision (b), clause (5), of this section." 11 U.S.C.A. § 207 (e) (1) (c).

It therefore becomes necessary to consider subsection (b), clause (5), 11 U.S.C.A. § 207 (b) (5), which provides that the plan of reorganization "shall provide in respect of each class of creditors of which less than two thirds in amount shall accept such plan (unless the claims of such class of creditors will not be affected by the plan, or the plan makes provision for the payment of their claims in cash in full), provide adequate protection for the realization by them of the value of their interests, claims, or liens, if the property affected by such interests, claims, or liens is dealt with by the plan, either as provided in the plan (a) by the transfer or sale of such property subject to such interests, claims, or liens, or by the retention of such property by the debtor subject to such interests, claims, or liens, or (b) by a sale free of such interests, claims, or liens at not less than a fair upset price and the transfer of such interests, claims, or liens to the proceeds of such sale; or (c) by appraisal and payment either in cash of the value either of such interests, claims, or liens, or, at the objecting creditors' election, of the securities allotted to such interests, claims, or liens under the plan, if any shall be so allotted; or (d) by such method as will in the opinion of the judge, under and consistent with the circumstances of the particular case. equitably and fairly provide such protection."

It will be observed that section 77B, unlike section 77, furnishes a method by which a reorganization plan may be put into effect in the event that the debtor is unable to secure consent to its plan of two-thirds of each class of creditors to be affected thereby, not only without their approval, but, by necessary implication, despite their opposition. The plan may provide under subsection (b) (5) for the sale of the property subject to lien, for its sale free of liens and the transfer of the liens to the proceeds, or for the method recited in clauses (c) and (d). With the first two of the methods incorporated in the subsection, we are not concerned, because · the debtor does not desire to have the property sold either free from or subject to liens. It wishes to secure possession of the property and to resume its operation. We are concerned, therefore, only with the methods provided by which the debtor may regain its property without consent of creditors, have it appraised, and then relieve itself of obligation by paying each of them in cash, either (1) of the value of their interests, claims, or liens; or (2) at the creditors' election (of the value) of the securities allotted to such interests, claims, or liens, if any shall be so allotted; or (3) by such method as will in the opinion of the judge equitably and fairly provide such protection.

The present debtor's several plans of reorganization, particularly the third, are in recognition of the futility under existing circumstances of securing the consent of two-thirds of its creditors of each class. It proceeds upon the assumption that such consent is not necessary by framing its reorganization plans under the alternative method provided by subsection (b) (5). We assume it to be unnecessary to give detailed consideration to the first or second plan, for, faced with a contention that neither is feasible, and that each would invade vested constitutional rights, it presented its third plan and modifications thereof, and we may assume that this represents up to the time of the decree its ultimate effort to repel attack upon the feasibility of reorganization, and upon asserted invalidity in the application of the statute.

We confess our inability to understand the debtor's proposed reorganization plan in all of its phases, even after diligent study, effort to separate argument from concrete proposals, and an earnest attempt to reconcile apparently conflicting clauses. This much, however, seems reasonably clear: The debtor desires to have all the property which for two years has been in the possession of the equity receiver, including unmortgaged property, returned to it, subject to such liens as the court shall determine. It proposes that the bondholders shall have their securities scaled down to 80 per cent. of their face

value, and that the court shall fix a reasonable rate of interest in place of the agreed interest. Nonassenting bondholders are to have the value of their securities fixed by the court, and to have a lien on the mortgaged property for such value, though it is also proposed to pay nonassenting bondholders such ascertained value in cash. The debtor proposes to pay for the unmortgaged property in the hands of the receiver the sum of $40,000 in cash at a time to be fixed by the court. For the further purpose of protecting bondholders, the debtor proposes to deposit $10,000 to pay interest in advance upon the bonds for a three months' period, but nothing is provided in the plan with respect to the defaulted interest upon the bonds during the two years that the debtor's properties have been in the hands of the receiver. Then follow provisions for a bond issue and for class A and class B preferred stock, out of the proceeds of which present unsecured creditors and preferred stockholders are to be compensated. We make no effort to state them, for they are wholly incomprehensible. The court is also asked to reascertain the present holders of the debtor's mortgage bonds, and the amount due each bondholder, although a judicial determination as to these matters has already been had in the equity proceedings by a master, with his report presumably confirmed by the court without objection thereto by the debtor, though a party to the receivership proceedings. From the argument, interwoven with the proposals of the submitted plan, it appears that the debtor is informed that some of the present bondholders have paid for their bonds an amount less than their face value, and it appears, inferentially at least, that the debtor desires the court to fix the amount due bondholders who have paid for their holdings since the beginning of the receivership an amount less than their face value, the amount so paid, and then have such amount scaled down to 80 cents upon the dollar. We are pointed to no provision of the statute which permits this to be done, and independent inquiry fails to disclose any.

The reorganization plan is opposed on the ground that it is not presented in good faith, and that any scaling down of secured indebtedness or of agreed interest or denial of the right of lienholders to have the mortgaged property sold at public sale in accordance with the terms of the trust deed, is taking the property of the bondholders without due process in violation of the Fifth Amendment to the Constitution of the United States. While the court found the plan to have been presented in good faith, it is urged that the court erroneously applied the law; that good faith is not a question of honest motive or intention, but is to be determined by the feasibility of the plan and a reasonable expectation that it will be successful, in reliance upon Manati Sugar Company v. Mock et al., 75 F.(2d) 284 (C.C.A.2), and In re 235 West 46th Street Company, Inc., 74 F.(2d) 700 (C.C.A.2). The District Judge rejected the contention as to absence of good faith, but declared subsection (b) (5), in so far as it permits adjustment of liens without the consent of creditors, constitutionally invalid, and dismissed the petition.

We have first to consider whether the question of the debtor's good faith in submitting its proposed plan of organization is properly before this court upon the main appeal. This involves a consideration as to whether the decision below upon that question involves an issue of law cognizable upon appeal under section 24b. It is clear from the court's memoranda that in deciding the issue of good faith it was guided mainly by a consideration of the honesty of purpose on the part of the debtor in submitting its plan. Section 77B does not undertake to define good faith. We think it clear, however, in agreement with the Second circuit, that something more than sincerity of intention was intended. The purpose of the statute is to relieve distressed debtor corporations and to provide the mechanics for reorganization where reasonable expectation of continued useful existence may be fairly entertained. This being so, something more must be demonstrated by the debtor than mere honesty or sincerity of purpose. If not, then the way is open to the exploitation of every involved corporation by visionaries whose illusory and optimistic imaginations outrun their business judgments, and the interest of every legitimate creditor is at the mercy of debtors whose sole hope of financial salvation is an abiding faith in miracles. If we are right in this, there was erroneous application of the law in the finding of good faith, and the decree dismissing the petition should upon familiar principles governing appeals in

equity be affirmed if right, however erroneous may be any given conclusion of law.

■ It appears from the record that the total assets of the debtor upon fair appraisal are worth less than $300,000. The bonded indebtedness exceeds $900,000, and the unsecured indebtedness is more than $300,000. To this must now be added the cost and expenses of the receivership. Moreover, the receiver has been operating at a loss, and the debtor concedes that it also will for a time operate at a loss; its most optimistic undertaking being, if the property is restored to it, to reduce current losses 25 per cent. When these figures are considered together with the vagueness of detail in the proposed plan, the doubt that exists as to whether under section 77B there may now be a reopening of the adjudication of the claims against the debtor in the equity proceeding, it seems clear to us that the proposed plan is not a workable plan, offers no reasonable prospect for successful rehabilitation of the debtor, and is in consequence not, in the sense the phrase is used in the section, presented in good faith.

Having concluded that the plan fails to meet the statutory test, it may appear that discussion should end here with mandate for affirmance of the decree, and that upon familiar principles no holding as to constitutionality of the assailed subsection is required. As was said by the Supreme Court in Howat v. Kansas, 258 U.S. 181, 184, 42 S.Ct. 277, 279, 66 L.Ed. 550, "Obviously we should not pass upon the constitutional validity of an act * * * unless the case before us requires it," and in Euclid v. Ambler Realty Co., 272 U.S. 365, 397, 47 S.Ct. 114, 121, 71 L.Ed. 303, 54 A.L.R. 1016, "In the realm of constitutional law, especially, this court has perceived the embarrassment which is likely to result from an attempt to formulate rules or decide questions beyond the necessities of the immediate issue." With profound deference to the canons of self-restraint to which courts subordinate their high power to inquire into the constitutional validity of acts of Congress, we have carefully explored the possibility of avoiding the constitutional question here presented. We are confronted with difficulty.

Faced with attack upon the feasibility of its plan of reorganization, the debtor has repeatedly presented alternatives and modifications. This is its right, not only by virtue of the liberal spirit of the statute, but by the express language of subsection (f) (7) of section 77B (11 U.S.C.A. § 207 (f) (7), which provides that before or after a plan is confirmed changes ·and modifications may be proposed therein by any party in interest. The debtor, having finally received approval of the court upon the good faith of its latest plan, proceeded no further in its efforts to comply with the statutory requirement in that respect. Were we now to rest· decision solely upon lack of good faith, it would seem appropriate to permit further proposals, for the debtor, having been misled by the court, should not be precluded from further effort to meet statutory requirements. Moreover, we see no legal impediment to submission by the debtor, or at least by a group of friendly creditors, of an entirely new plan of reorganization not heretofore considered and adjudicated. In either event the constitutional question would remain open for ultimate decision upon perhaps no better presentation than at present, and the submission of amendments to more fully demonstrate good faith, purely academic and fruitless. In the meanwhile the property of the debtor and the security of the lienholders will be further depleted by operating losses of the receiver. We see no escape therefore from present decision upon the validity of subsection (b) (5).

■ The constitutionality of section 77B in its general scope and application is not here assailed, and, in view of the decision in Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & Pac. Railway, supra, is perhaps not open to successful assault. That case, however, goes no farther in its consideration of the due process clause of the Fifth· Amendment than to hold that statutory provisions permitting delay in the enforcement of contracts affect only the remedy, and deals with a statute which does not permit adjustments of liens without lienholders' consent. Such delay in the application of remedies impairs no vested right, and this was also the rationale of the decision in Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 89 A.L.R. 1481, in consideration of the due process clause of the Fourteenth Amendment. We are

here concerned only with the validity of a clause which provides for adjustment of debts without the consent of creditors. It has long been settled that provisions in bankruptcy statutes authorizing compositions have never been held to invalidate them. This is because a composition is a matter of agreement between the bankrupt and his creditors as a class, with the will of the majority imposed upon the minority. In re Lane (D.C.) 125 F. 772, 773; Cumberland Glass Mfg. Co. v. DeWitt, 237 U.S. 447, 452, 35 S.Ct. 636, 59 L.Ed. 1042.

We confine ourselves to the provisions of subsection (b) (5), which outline a method for adjustment of claims of nonassenting creditors, and inquire as to their validity in the light of the due process clause. Upon this issue we view the decision of the Supreme Court in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, controlling. Here, under Tennessee law, as there under Kentucky law, the lien holders had the right under their contract to retain the lien until the indebtedness secured was paid, the right to realize upon the security by a judicial public sale, the right to determine when such sale should be held, subject only to the discretion of the court, the right to protect their interest in the property by bidding at such sale, the right to have the mortgaged property devoted primarily to the satisfaction of the debt; and the right to control the property meanwhile during the period of default, subject only to the discretion of the court, and to have the rents and profits during such period applied to the satisfaction of the debt. These rights are substantive property rights, and any invasion of them under the authority of the present statute is as clearly violative of the due process clause of the Fifth Amendment as it was in the Radford Case. We have no occasion to renew our excursion into the history of bankruptcy legislation or to again undertake that realistic approach to the problem that we ventured upon in the Radford Case when it was considered by us (74 F.(2d) 576). That manner of approach was rejected by the Supreme Court as an aid to solution, and so must we now reject it when it is again urged upon us.

We hold subsection (b) (5) of section 77B (11 U.S.C.A. § 207 (b) (5) of the Bankruptcy Act unconstitutional and invalid in the respects indicated. Stripped of invalidity, the section is still an operable statute, and as to validity in its general scope and application there is no occasion for comment other than has been indicated.

The decree below is affirmed.

ALLEN, Circuit Judge (concurring).

I concur in the conclusion and in that part of the decision which relates to the unconstitutionality of the statute. The decision in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, compels this result. I dissent, however, from that part of the opinion which defines "good faith" as requiring feasibility of the plan proposed. Congress, in enacting the statute, required simply that the District Judge should be satisfied of "good faith." In so doing, it doubtless bore in mind the fact that in innumerable cases covering every kind of legal situation, the courts of this country, from the highest to the lowest, have defined good faith as meaning honesty of purpose. It is an unfortunate circumstance that integrity and business acumen are not always united. In this statute the Congress required integrity, and the District Judge correctly found that good faith was shown in the submission of this plan.