## TELLIER v. FRANKS LAUNDRY CO.
### (two cases).*
## Nos. 11318, 11319.

Circuit Court of Appeals, Eighth Circuit.
Feb. 20, 1939.

J. A. Tellier, of Little Rock, Ark., for appellant.

E. Chas. Eichenbaum, of Little Rock, Ark., for appellee.

Before STONE, GARDNER and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal in bankruptcy from an order confirming a plan of reorganization of the Franks Laundry Company, a corporation, in a voluntary proceeding instituted by the debtor under section 77B of the Bankruptcy Act, 48 Stat. 911, 912, 11 U.S.C.A. § 207. The appellant is a secured creditor holding 6% first mortgage bonds of the debtor of the par value of $2800.

The debtor has been engaged for several years in owning and operating a laundry business in the City of Little Rock, Arkansas. It owned land, a building and laundry equipment. In its petition, filed March 21, 1938, it alleged that its business had been declining since 1929; that it is unable to meet its debts as they mature; that it is unable to borrow; that, upon information and belief, its assets exceed its liabilities; and that it apprehends that its creditors will institute proceedings against it on account of its past due obligations causing it great and irreparable injury. Attached to and submitted with the petition were a plan of reorganization and a financial statement.

On the same day the petition was filed an order was entered approving it as properly filed and authorizing the debtor to retain possession of its property and to operate it through two agents, who had made an offer to purchase its business.

*Rehearing denied March 16, 1939.

The appellant filed objections to the proposed plan of reorganization. The issues were referred to a special master. After a hearing the master recommended confirmation of the plan to which exceptions were taken; and on June 30, 1938, a decree was entered approving and confirming the plan.

The appellant contends here, as he did in the lower court, (1) that the plan of reorganization is unfair and inequitable; (2) that it is discriminatory; and (3) that it was not filed in good faith.

Pursuant to an order of the court the debtor filed a financial statement showing its claimed assets and liabilities as of March 19, 1938. This statement showed assets aggregating $81,445.49 and liabilities amounting to $58,042.53, or a net worth of $23,402.96. The corporation was capitalized for $90,000 divided into 3600 shares of the par value of $25 each.

█ . The assets include, net cash, $3.97; accounts receivable, $4,852.57; treasury stock, $5,000; store supplies, $342.96; Milton Loeb account, $4,166.42; Edward Frank account, $779.17; prepaid insurance, $957.37; prepaid expenses, $20.09; land, $5,000; building, $47,013.78; machinery and equipment, $11,503.64; wood cylinder replacement, $190.99; cash surrender value of life insurance, $200.33; and a credit balance for discarded equipment of $1,414.20; making up the total of $81,445.49. The statement shows book values. No appraisal by disinterested appraisers was made. The master found the book values to be the actual values. Without an appraisal, however, upon the undisputed evidence before him consisting of the pleadings and oral testimony, he should have found that the treasury stock listed at $5,000 had no value; that the accounts receivable were not worth par; that the Milton Loeb account of $4,166.42 was not collectible; and that the credit balance on discarded equipment in the sum of $1,414.20 was not a valuable asset.

The liabilities consist of accounts payable, $7,539.04; due bank, unsecured, $6,450; notes for equipment, secured, $1,414.97; accrued payroll, etc., $805.44; accrued taxes, $3,885.50; other accounts, $3,947.58; and first mortgage bonds, $34,000; totaling $58,042.53. The evidence and the pleadings disclose that the liabilities must be increased by further accrued taxes and delinquent interest in a very considerable amount.

Before examining the plan of reorganization we should note some further details of the debtor's status. The capital stock of the corporation, except some qualifying shares, is all owned by three sisters and their brother. In 1931, the debtor issued its 6% first mortgage bonds in the sum of $40,000 to mature in 1932 to 1936, inclusive. $6,000 par value of these bonds have been paid, leaving unpaid and now past due $34,000, with three installments of delinquent interest at the time of the hearing. It is of these bonds that the appellant holds $2,800 par value. The bonds are secured by a deed of trust conveying to a trustee for the benefit of the bondholders two lots in the city of Little Rock, the building thereon, the laundry equipment and machinery, the automobiles and trucks, as well as all other personal property then owned and after acquired by the debtor. It was also provided that delinquent interest should bear interest at the rate of 10 per cent per annum.

The plan of reorganization includes and is dependent upon a proposed sale of the laundry machinery, equipment, name, good will, work in progress and inventory to the two men now operating the business as agents of the debtor under the order of the court referred to above. They offer to pay $25,000 for the business and property and to lease the first floor of the laundry building for $275 a month. The personal property is to be sold free from the lien of the trust deed securing the bonded indebtedness. The purchase price is to be paid as follows: $6,000 in cash; $1,500 by assuming that amount of conditional sales contract liens on the debtor's automotive equipment; and $17,500 by purchase contract notes, bearing 6% interest, and maturing in 120 equal monthly installments with prepayment privilege secured by chattel mortgage on the property sold and its replacements. The second floor of the building is now leased for a rental of $100 a month. The two purchasers have no independent resources. The payment by them of the conditional sales contracts assumed by them and of the $17,500 of purchase price notes depends entirely upon their success in operating the laundry and on the lien of the purchase money chattel mortgage.

Assuming the execution of the proposed contract of sale and the release of the

lien of the trust deed now covering all of the debtor's property both real and personal to secure the outstanding bonds, the debtor will have available for reorganization purposes its land, its building, $6,000 in cash, some accounts receivable of doubtful value, and $17,500 par value of purchase contract notes maturing over a period of ten years; and with these resources the rights of the bondholders, the unsecured creditors and the stockholders must be taken care of. To accomplish this purpose the debtor by its plan of reorganization, as disclosed by the pleadings and the testimony, proposes three things:

A. An exchange of new bonds, bearing 6 per cent interest for the outstanding bonds in equivalent principal amount, the new bonds to be dated July 1, 1938, and to mature on or before ten years. The bonds shall be secured by the first lien of a trust deed upon the building, by an assignment of the leases upon the first and second floors of the building, subject to the payment of taxes and insurance premiums from the rentals, and by the assignment of $11,000 par value of the $17,500 of purchase notes secured by a chattel mortgage upon the laundry equipment. Non-interest bearing certificates are to be issued evidencing delinquent interest on the old bonds accrued through June 30, 1938, to be paid from the first funds available from rentals on the building and collection of the $11,000 of purchase notes.

B. Out of the $6,000 cash received from the sale of the laundry the taxes, amounting to approximately $4,400 at the time the petition was filed, will be paid. The balance of the cash is to be augmented by $6,500 advanced by the stockholders upon the security of the $6,500 purchase notes secured by chattel mortgage upon the laundry equipment and not pledged to the bondholders. With the cash available from these two sources the unsecured creditors are to be paid in full settlement of their claims 50 cents on the dollar and the costs of this proceeding defrayed.

C. The stockholders are to receive one share of no par value common stock for each ten shares of $25 par value stock now outstanding.

Acceptances of the plan have been filed by 84.4 per cent. of the bondholders, 96.2 per cent. of the unsecured creditors, and 100 per cent. of the stockholders.

Some features of the plan are striking and unusual. The debtor, for example, will go out of the laundry business, selling its equipment, name, good will, and inventory. It will hold its land now pledged to the bondholders free from incumbrances. No disposition is made in the plan of the accounts receivable, cash and other small items shown on the financial statement. The lease on the first floor of the building may be cancelled at the end of two years and the leases on the second floor expire in three years. The assignment of these leases to the bondholders is the only assurance given them that the building pledged to them will be free during the ten years their bonds may run and will not be burdened at any time with claims for ground rent or other charges by the owner of the land on which the building stands. Nothing is apparent to prevent the sale of the land at any time and to separate the title to it from the title to the building.

Another unusual feature of the proceedings is a clause in the order entered without a hearing on the day the petition was filed providing

"* * * that the Debtor shall be authorized to retain as operating Agents Clarence Pfeifer and William Burroughs, who have made an offer to purchase, which offer is set forth in the petition of the Debtor, without salary to either or both of the said Clarence Pfeifer or William Burroughs, and the said Debtor is authorized to borrow, if necessary, from the said operating Agents such necessary sums for the purchase of necessary supplies and for the maintenance, renovation and/or repair of the mechanical and automotive equipment, upon the credit of the assets of the Debtor's estate, and for such loans so advanced, the operating Agents, also offerors, shall have a first lien upon said assets, and shall receive a receipt for such moneys so advanced, as in form a Trustee's Certificate herein."

A review of the record raises a serious question in regard to whether or not the plan of reorganization here presented falls within the purview of section 77B of the Act. The essential element of the whole plan, as a plan, contemplates the sale of the debtor's business to strangers and the retirement of the debtor from business. It sells its name, its good will, the instruments by means of which it transacted business, and separates itself from the business as a going concern. In Warner Bros. Pictures v. Lawton-Byrne-

Bruner Ins. Agency Co., 8 Cir., 79 F.2d 804, 810, Judge Stone said: "Reorganization of distressed corporations * * * is a means whereby those variously interested financially in a distressed business seek, through continuance of that business as a going concern, to work out for themselves more than they could gain by sale of the assets or of the business to others." In Tennessee Pub. Co. v. American Nat. Bank, 6 Cir., 81 F.2d 463, 466, the court said: "The purpose of the statute [77B] is to relieve distressed debtor corporations and to provide the mechanics for reorganization where reasonable expectation of continued useful existence may be fairly entertained." In the case of In re R. L. Witters Associates, Inc., D.C.Fla., 19 F. Supp. 648, 651, the court said: "Undoubtedly section 77B is aimed at the 'continuance of a business as a going concern,' and does not contemplate an inactive corporation, bereft of its chief means of livelihood." Citing Brockett v. Winkle Terra Cotta Company, 8 Cir., 81 F.2d 949. Whether or not a plan of reorganization of a corporation under section 77B can be conceived which involves the sale of the business of that corporation, including its name, good will, and going concern value, it is clear from the authorities cited that the proposal of such a plan casts grave doubt upon the good faith of the debtor. It is a circumstance which should arrest the attention of the court and prompt a careful scrutiny of the plan to determine that it is fair and not discriminatory.

The appellant insists in this case with much emphasis that the plan approved by the court is unfair, inequitable and discriminatory. Subsection (f) of the statute provides that "After hearing such objections as may be made to the plan, the judge shall confirm the plan if satisfied that (1) it is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders, and is feasible." If the meaning of this statute were not clear and unambiguous it has been settled by the decisions of the courts that a court of bankruptcy has no power under it to approve a plan of corporate reorganization which will directly or indirectly divert assets to the stockholders to which the creditors are entitled as a matter of right. "Stockholders may not better their position at the cost of bondholders or other creditors." Sophian v. Congress Realty Co., 8 Cir., 98 F.2d 499,

502; Price v. Spokane Silver & Lead Co., 8 Cir., 97 F.2d 237; In re New York Rys. Corporation, 2 Cir., 82 F.2d 739; In re Day & Meyer, Murray & Young, Inc., 2 Cir., 93 F.2d 657. The interest of the stockholders in the assets of the corporation may only be recognized after the rights of creditors are fully protected and provided for. Sophian v. Congress Realty Co., supra; In re Barclay Park Corporation, 2 Cir., 90 F.2d 595.

The statute upon its face and the construction thus placed upon it by the courts condemn as unfair and discriminatory the plan of reorganization confirmed by the lower court. The financial statement submitted to the court, together with the testimony taken before the master, shows that the solvency of the corporation is doubtful. The stockholders contribute nothing to its rehabilitation except at the expense of the bondholders. The $6,500 advanced by them is only upon security taken from the bondholders. The lien securing the first mortgage bonds extends to all the corporation's real and personal property. Under the plan it is proposed to exchange these bonds for a new issue to mature ten years later based upon a substantially reduced security. The land the book value of which is $5,000 is to be entirely freed from the lien securing the old bonds. The personal property is to be sold free from the lien and the purchase notes, dependent for their only value upon the purchasers' success in business and the entirely inadequate security of a lien against rapidly depreciating assets of problematical future worth, are to be shared with the stockholders to secure them for an advancement to pay the unsecured creditors, who are to settle for 50 per cent. of the amount of their claims. According to the allegations of the petition "The property of the debtor has depreciated very rapidly and this has necessitated replacements and repairs." Under the order entered on the day the petition was filed, the proposed purchasers as operating agents are authorized to loan the debtor "necessary sums for the purchase of necessary supplies and for the maintenance, renovation, and/or repair of the mechanical and automotive equipment, upon the credit of the assets of the Debtor's estate, and for such loans so advanced, the operating agents, also offerors, shall have a first lien upon said assets", which lien will be superior to the lien of the bondholders. The result is that

the security of the bondholders, under the plan is dependent entirely upon the success of the purchasers, and, if they succeed, they may cancel their lease on the building at the end of two years, and the bondholders will have no security left except a lien upon a building standing upon land owned perhaps by someone other than the owner of the building. On the other hand the stockholders will have secured the land unincumbered, have the accounts receivable, will have paid all the unsecured creditors, and will have a share in the lien upon the personal property or its proceeds. The plan was not shown to be fair and non-discriminatory, and it should not have been confirmed. The fact that a large majority of the creditors have approved the plan can not sustain it under the circumstances. Sophian v. Congress Realty Co., supra; Price v. Spokane Silver & Lead Co., supra; In re Barclay Park Corporation, supra; In re Day & Meyer, Murray & Young, Inc., supra.

Since we hold that the plan of reorganization is unfair and discriminatory the contention that the plan was not filed in good faith becomes immaterial. The appellant also objected to the arrangement in the plan for the reduction and payment of delinquent interest on the bonds. The amount involved in this part of the complaint is not substantial; and, if the plan were fair in all other particulars, it would not warrant a reversal under the statute.

The order appealed from is reversed and the case remanded for further proceedings not inconsistent with this opinion.